E-FILED
Friday, 18 September, 2015  01:22:10 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| NOBLE DONTIA EDWARDS EL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CIRCUIT COURT OF THE TENTH | ) |
| JUDICIAL CIRCUIT OF ILLINOIS | ) |
| PEORIA, STATE OF ILLINOIS THIRD | ) |
| DISTRICT APPELLATE COURT, MARK | ) Case No. 1:14-cv-01325-SLD-JEH |
| E. GILLES, DANIEL L. SCHMIDT, MARY | ) |
| K. O'BRIEN, MARY W. MCDADE, | ) |
| MICHAEL E. BRANDT, DAVID J. | ) |
| DUBICKI, CHRIS FREDRICKSON, GIST | ) |
| FLESHMAN, STATE OF ILLINOIS, | ) |
| BOBBIE GREGG, ROB SCHIFFMAN, | ) |
| DENISE KANE, ANDREA DETRA, | ) |
| RAELYN GALASSI, ILLINOIS | ) |
| DEPARTMENT OF CHILDREN AND | ) |
| FAMILY SERVICES, LUTHERAN | ) |
| SOCIAL SERVICES OF ILLINOIS, | ) |
| AUTUMN FICKES, TASC, INC., LISA | ) |
| ROSCAMP, CHANNING PETRAK, CHRIS | ) |
| FRERICKS, LEVON M. TERRY, AMBER | ) |
| MEDLEY-TERRY, KATHLEEN L. | ) |
| WILSON, D JEAN ORTEGA-PIRON, | ) |
| KATHLEEN EICHINGER, OSF | ) |
| HEALTHCARE SYSTEM, THERESA ANN | ) |
| BRAZEAU, | ) |
| | ) |
| Defendants. | ) |

<u>ORDER</u>

Plaintiff Noble Dontia Edwards El seeks injunctive and monetary relief for alleged constitutional and state law violations committed by Defendants in the process of depriving Plaintiff of custody of her two minor children, A.E. and D.T.  Groups of defendants and some individual defendants now move for dismissal:  the Circuit Court of the Tenth Judicial Circuit of

1

Illinois Peoria, the State of Illinois Third District Appellate Court, Mark Gilles, Daniel Schmidt, Mary O'Brien, Mary McDade, Michael Brandt, David Dubicki, Chris Fredrickson, Gist Fleshman, and the State of Illinois ("the Judicial Defendants"), ECF No. 67; Bobbie Gregg, Rob Schiffman, Denise Kane, Andrea Detra, Raelyn Galassi, Illinois Department of Children and Family Services ("the DCFS Defendants," who also move, ECF No. 72, for leave to exceed the type volume limitations set by local rule), ECF No. 70; Lutheran Social Services of Illinois and Autumn Fickes[1] ("the LSS Defendants") ECF No. 78; TASC, Inc.[2] ("TASC"), ECF No. 74; Channing Petrak, ECF No. 81; and Chris Frericks,[3] ECF No. 65.  For the reasons stated below, all the motions to dismiss are GRANTED, and the case DISMISSED as to all defendants.

## BACKGROUND[4]

Plaintiff identifies as a Moslem of the West, and is a member of the Moorish Science Temple of America ("MSTA").[5]  In accordance with her faith, she gave birth to N.E. in 2012 not at a hospital, but with the assistance of a midwife familiar with her faith.  Also in accordance with her faith, she performed a "Lotus Birth," which involves leaving the umbilical cord and placenta attached to the newborn infant until the umbilical cord falls off on its own.  Some days after giving birth, Plaintiff noticed redness around her daughter's navel, which was still attached to the umbilical cord and placenta.  Plaintiff prayed to heal N.E. and applied certain natural

---

[1] Fickes is misidentified in the Amended Complaint, ECF No. 63, and the docket, as "Autumn Freckles."  See LSS Mot. Dismiss 1.
[2] TASC is misidentified in the Amended Complaint and the docket as "Healthworks of Illinois Peoria/Marshall County Lead Agency TASC, Inc."  See TASC Mot. Dismiss 1.
[3] Frericks is misidentified on the Amended Complaint and the docket as "Chris Frerickson."  See Frericks Mem. Supp. Mot. Dismiss 1, ECF No. 66.
[4] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff.  *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted).  Accordingly, the material set forth here is based on allegations in the Amended Complaint, or taken from the Appellate Court of Illinois's Order in *In re A.E. and D.T., Minors*, 120968-U (Ill. App. Ct., Aug. 26, 2013), Judicial Defs.' Mot. Dismiss Ex. 1, ECF No. 68-1.  For a discussion of the latter, see *infra*, n.6.
[5] The Moorish Science Temple of America is a religious organization founded in the early years of the twentieth century, one of whose primary tenets is that African-Americans are "Moorish," descending from people of modern-day Morocco and surrounding nations.  See Wikipedia, *Moorish Science Temple of America*, https://en.wikipedia.org/wiki/Moorish_Science_Temple_of_America (last visited August 10, 2015).

medicines to the growing infection. A few days later, the umbilical cord fell off, and Plaintiff noticed "a small amount of purulent matter" come out of the child's navel. She discovered more of this matter in her daughter's navel the next day. On June 8, 2012, she brought N.E. to the emergency room at OSF Saint Francis Hospital.[6]

Raelyn Galessi, a DCFS investigator, tried to question Plaintiff about her children. DCFS then removed the children, A.E. and D.T., from her custody. Illinois filed neglect petitions in Illinois Circuit Court on June 18, 2012, alleging medical neglect, an injurious environment based on the lack of medical care, a failure to cooperate with DCFS, prior cases with Child Protective Services in St. Louis, Missouri, the criminal history of Armando A. (one of the children's father), and Armando A's and Plaintiff's failure to complete requested drug testing. After a shelter care hearing on June 18, 2012, the children were placed in the temporary custody of DCFS. At an adjudicatory hearing on October 15, 2012, the Illinois court made A.E. a ward of the court, and

---

[6] Plaintiff's account of the facts, while running dozens of pages in her 122-page complaint, does not describe in any detail how her children were taken by DCFS or what happened afterward. Representatively: "In June 2012, Raelyn Galassi led the investigation which led to Plaintiff, Noble Edwards El's wrongful conviction . . . ." Am. Compl. ¶ 15. Plaintiff's account of the legal proceedings that followed is wandering and tends to focus on things Plaintiff said and did, to the exclusion of identifying what the proceedings were and what their outcome was. For instance: "After Raelyn Galassi's testimony Plaintiff called the State of Illinois to take the stand . . . . Mark Gilles states Edwards El [sic] request 'to be a ridiculous proposition' . . . . Edwards El then demanded that the charges be dismissed since there was no injured party in the case." *Id.* ¶ 75. Unfortunately, the facts of the subsequent legal proceedings, and the nature of the various adjudications performed by Illinois courts, are critical to this Court's determination of subject matter jurisdiction under *Rooker-Feldman* doctrine, as explained below. Thus, the Court takes judicial notice of *In re A.E. and D.T., Minors*, 120968-U (Ill. App. Ct., Aug. 26, 2013), the Appellate Court of Illinois case in which Plaintiff's constitutional claims were adjudicated, in order to adduce basic procedural facts about the adjudication of Plaintiff's case in state court, which Plaintiff herself nowhere, or nowhere clearly, recites. "A court may take judicial notice of an adjudicative fact that is both not subject to reasonable dispute and either 1) generally known within the territorial jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (internal quotation marks omitted) (citing Fed. R. Evid. 201(b)). The appellate court's adjudications in *In re A.E. and D.T., Minors*, as well as the general procedural facts and history summarized therein, are such facts. *See Lease Resolution*, 128 F.3d at 1081–82 (collecting cases). Additionally, insofar as Plaintiff's account of these facts differs from the procedural history related in the *In re A.E. and D.T.*, the Court is not required to accept as true those of Plaintiff's allegations that go to jurisdiction under *Rooker-Feldman*—that is, those allegations that describe the nature of the prior state-court adjudication. "The district court is not bound to accept as true the allegations of the complaint as to jurisdiction where a party properly, as through a Rule 12(b)(1) motion, raises a factual question concerning the court's jurisdiction." *Gervasio v. United States*, 627 F. Supp. 428, 430 (N.D. Ill. 1986) (citing *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979)).

placed D.T. in the custody of Levon Terry, the child's legal father. Plaintiff appealed the court's ruling to the Illinois Appellate Court.

The Illinois Appellate Court held that the trial court had had jurisdiction over the matter. *In re A.E. and D.T., Minors*, 120968-U, ¶¶ 11–12 (Ill. App. Ct., Aug. 26, 2013), Judicial Defs.' Mot. Dismiss Ex. 1, ECF No. 68-1. It held that Plaintiff's First and Fourth Amendment rights to freedom of speech and freedom from unreasonable search and seizure had not been violated. *Id.* ¶¶ 14–17. And it held that the trial court had not needed to name the Moorish Science Temple as a party to the action. *Id.* ¶¶ 18–19. It affirmed the holding of the trial court, and denied Plaintiff's request for custody. *Id.* ¶¶ 20–21.

Plaintiff filed the instant federal litigation on August 18, 2014, ECF No. 1. She amended her complaint on December 30, 2014, ECF No. 63. The motions to dismiss currently before the Court followed; Plaintiff has not responded to any of them.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). However, when a Rule 12(b)(1) motion challenges subject matter jurisdiction, and that challenge is factual rather than facial,[7] a court is "not bound to accept as true the allegations of the complaint which tend to establish jurisdiction . . . [and] may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 828 (7th Cir. 2013) (internal quotation marks omitted). The party invoking federal

---

[7] "A facial attack is a challenge to the sufficiency of the pleading itself . . . . A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert. denied*, 513 U.S. 868 (1994).

jurisdiction has the burden of supporting his jurisdictional allegations with competent proof. *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979).

If a motion is not opposed within 14 days after service, the presiding judge may rule on the motion without further notice to the parties.  CDIL-LR 7.1(B)(2).

## DISCUSSION

### I. Plaintiff's Claims and Defendants' Motions to Dismiss

Plaintiff's complaint raises 24 counts against (at present) 30 defendants, over the course of 122 pages.  It is sometimes difficult to tell against which defendants each count is brought, although it often appears that counts are directed at all defendants, or so the Court infers from the frequent use of the term "defendants" to indicate the accused party.  The Counts are:  I, "Substantial Burden on Religious Exercise in Violation of the Free Exercise Clause of the Frist Amendment," Am. Compl. 48–55; II, "Excessive Entanglement in Violation of the Free Exercise and Establishment Clauses of the First Amendment," *id*. at 55–60; III, "Religious Discrimination in Violation of the Free Exercise and Establishment Clauses of the First Amendment," *id*. at 60–63; IV, "Excessive Interference in Matters of Internal Governance in Violation of the Free Exercise and Establishment Clauses of the First Amendment," *id*. at 63–68; V, "Compelled Speech In Violation of the Free Speech Clause of the First Amendment," *id*. at 69–73; VI, "42 U.S.C. § 1983 Due Process," *id*. at 73–78; VII, "42 U.S.C. § 1983 6th Amendment," *id*. at 78–79; VIII, "42 U.S.C. § 1983 Equal Protection," *id*. at 80–83; IX, "Section 1985(3) Conspiracy Conspiracy to Deprive Constitutional Rights," *id.* at 83–86; X, "Section 1983 Conspiracy to Deprive Constitutional Rights," *id*. at 86–88; XI, "42 U.S.C. § 1983 Failure to Intervene," *id*. at 88–89; XII, "Malicious Prosecution," *id*. at 89–91; XIII, "Civil Conspiracy," *id*. at 91–93; XIV, "Intentional Infliction of Emotional Distress," *id*. at 93–97; XV, "Respondent [sic] Superior," *id.*

5

at 98–99; XVI, "Indemnification," *id.* at 99; XVII, "Trust Corpus Infringement Under Hurds' Revised Statutes 110," *id.* at 99–101; XVIII, "Article I of the Constitution of the United States of America," *id.* at 101–04; XIX, "Defamation, Libel, and Slander," *id.* at 104–05; XX, "Child Custody," *id.* at 105–07; XXI, "Fraud & Misrepresentation," *id.* at 107–10; XXII, "Racketeering," at *id.* 110–15; XXIII, "Medical Malpractice," *id.* at 115–18; and XXIV, "Breach of Trust, Fiduciary Duties," at *id.* 118–19. Plaintiff seeks the return to her of A.E. and D.T., a declaratory judgment that the State of Illinois and DCFS's "Complaint and action was induced by fraud," *id.* at 119, expungement of "all judgments and order against Plaintiff," *id.*, return of any property that may have been taken from her, a preliminary injunction against all defendants prohibiting them from interfering with any action the Court might take, $209,900,000.00 per child per defendant (with defendants currently in the case: $12.59 billion), an accounting from all defendants of all ill-gotten gains, treble damages, costs, and any other equitable relief the Court deems appropriate. *Id.* at 119–20.

Chris Frericks moves to dismiss as to himself on the ground that Plaintiff has already moved to dismiss as to Frericks, Frericks' Mem. Supp. Mot. Dismiss 1–2, ECF No. 66, failure to state a claim, *id.* at 2–4, and improper service, *id.* at 4–5. The judicial defendants move to dismiss for lack of subject matter jurisdiction pursuant to *Rooker-Feldman*, Judicial Defs.' Mem. Supp. Mot. Dismiss 4–8, ECF No. 68; and failure to state a claim as to various defendants for a number of reasons, *id.* at 8–23. The DCFS defendants move to dismiss under *Rooker-Feldman*, DCFS Defs.' Mem. Supp. Mot. Dismiss 5–9, ECF No. 71; res judicata, *id.* at 9–10; and failure to state a claim as to various defendants for various reasons, *id.* at 10–24. TASC moves to dismiss for failure to state a claim, TASC's Mem. Supp. Mot. Dismiss 1–10, ECF No. 75; and because of improperly pleaded diversity jurisdiction as between itself and Plaintiff, *id.* at 10–11. The LSS

defendants move to dismiss for insufficiency of service of process, LSS's Mem. Supp. Mot. Dismiss 2–3; ECF No. 79; on *Rooker-Feldman* grounds, *id.* at 3–5; improperly pleaded diversity as between itself and plaintiffs and a number of other subject matter jurisdiction problems, *id.* at 5–6; lapse of the statute of limitations, *id.* at 6–8; and failure to state a claim, *id.* at 8–18. Finally, Dr. Channing Petrak moves to dismiss for failure of personal service, Petrak's Mem. Supp. Mot. Dismiss 4–6, ECF No. 82; lapse of the statute of limitations, *id.* at 6; failure to state a claim, *id.* at 6–12; and *Rooker-Feldman*, *id.* at 12.

As an initial matter, Chris Frericks is correct that Plaintiff already voluntarily dismissed all claims against him. In an "Agreed Motion to Dismiss Without Prejudice," ECF No. 52, filed on November 5, 2014, Plaintiff moved to dismiss a number of defendants as unintentionally named in her initial Complaint. One of them was Chris Frericks. *See id.* at 1. The Court initially acknowledged this dismissal in a text order on November 6, 2014, but struck that order the same day, partly because the initial complaint named both a Chris Fredrickson and a Chris Frerickson, but not a Chris Frericks. The confusion appears to have arisen because Chris Frerickson, properly so named, is one of the Judicial Defendants, and Plaintiff intended in her initial complaint to name both him and Chris Frericks, but identified the latter as Chris Frerickson. See Compl. 96, ECF No. 1. Given that Defendant Frericks is indeed Defendant Frericks, whom Plaintiff explicitly wished in her "Agreed Motion" to dismiss, and, as he observes, he is nowhere mentioned in the body of Plaintiff's original or amended complaints, his dismissal is appropriate, and, in fact, has already been effected by Plaintiff's notice of dismissal, without the need for the Court to take any action. *See* Fed. R. Civ. P. 41(a)(1)(A)(i); *Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*, 491 F. App'x 744, 746 (7th Cir. 2012) ("Voluntary dismissals are self-executing when filed prior to any responsive pleadings by the defendants.").

7

The defendants present a welter of arguments why the case should be dismissed as to each of them, with much overlap. The Court first considers the argument, made by many defendants, that the *Rooker-Feldman* doctrine creates a jurisdictional bar to consideration of the case. *See McCready v. White*, 417 F.3d 700, 702 (7th Cir.2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit."). If the Court lacks subject matter jurisdiction over some or all of the claims (as, we shall see, it does), then this approach has the added benefit of determining whether claims can proceed against those defendants who have been served but not responded. Additionally, the other arguments of the parties who have moved to dismiss cannot in any case be addressed until the Court has assured itself that it has subject matter jurisdiction. *See, e.g.*, *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 535 n.4 (7th Cir.2004) ("[W]e may not consider the issue of res judicata because we lack the subject matter jurisdiction to do so . . . .").

## II.     *Rooker-Feldman* Doctrine and Subject Matter Jurisdiction

The doctrine, named for two Supreme Court cases, stands for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring). In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), a disappointed state court plaintiff filed his suit in federal court, claiming that the state court's decision rested on an unconstitutional statute. The district court found that it had no jurisdiction over the case, and the Supreme Court agreed, on the ground that federal district courts' jurisdiction is strictly original, adding that the only federal court that may reverse or modify a state court's final decision is the Supreme Court. 263 U.S. at 415–16. In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), an applicant to the District of Columbia bar association who was rejected sought review of that decision in a

8

federal district court. The Supreme Court ruled that, to the extent the plaintiffs sought review of a final state court judgment, the district court had no authority to consider the matter. 460 U.S. at 483. *Rooker-Feldman* is thus a jurisdictional bar to a court's consideration of a case, rather than an affirmative defense, unlike the highly similar doctrine of res judicata, or claim preclusion.[8] *See Fayyumi v. City of Hickory Hills*, 18 F. Supp. 2d 909, 914 (N.D. Ill. 1998).

*Rooker-Feldman* operates not just on claims already considered and decided by state courts, but also on claims technically new to the federal complaint that nonetheless arise from the same causal nexus that provoked the adjudicated state court claims. *See Feldman*, 460 U.S. at 483. "The Supreme Court has explained that if the federal claims are '*inextricably intertwined*' with the state court's ruling, the district court has no subject matter [jurisdiction] over the issue, even if the plaintiff failed to raise the federal claim in the state court." *Fayyumi*, 18 F. Supp. 2d at 913 (quoting *Feldman*, 460 U.S. at 483). In determining whether a new claim is inextricably intertwined with a state court's ruling, federal courts are, in essence, seeking to discern "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702–03 (7th Cir. 1998). When the injury alleged results from a state court judgment, the plaintiff's federal claim is in the nature of an appeal of a binding state court decision, and barred by *Rooker-Feldman*. *Id.* Thus, unlike res judicata, which bars a plaintiff who seeks to "ignore rather than upset the judgment of the state tribunal," *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995), *Rooker-Feldman* deprives a federal court of jurisdiction where a state court loser "asserts

---

[8] Indeed, the *Rooker-Feldman* doctrine is so similar in its effect to res judicata that it has been called "nearly redundant[,] because most of the actions dismissed for want of jurisdiction also could be resolved by invoking the claim- or issue-preclusion consequences of the state judgments." Edward H. Cooper, *"Rooker-Feldman": Res Judicata as Jurisdiction*, 18B Fed. Prac. & Proc. Juris. § 4469.1 (2d ed.). However, it does matter which doctrine is applied, at the very least because "[w]here Rooker-Feldman applies, lower federal courts have no power to address other affirmative defenses, including res judicata." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

9

injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review," *id.*[9]

The complex and circumscribed doctrine, often described by higher courts as "confined to cases of the kind from which [it] acquired its name," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), exists for one simple and good reason: to forestall "what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights," *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

Plaintiff, despite the massive and curiously digressive prolixity of her pleading, is challenging a loss she suffered in Illinois state court: her loss of custody of her two minor children, A.E. and D.T. Sometime in mid-June 2012, Illinois DCFS removed Plaintiff's children from her custody and initiated a neglect proceeding. *In re A.E. and D.T.* ¶ 4. It promptly filed neglect petitions, *id.* ¶ 5, and an Illinois court made temporary custody placements of the children on June 18, 2012, *id.* ¶ 6. On October 15, an Illinois court adjudicated the children as neglected, *id.* ¶¶ 7–8, and on November 5, 2012, placed D.T. in the custody of his father and placed A.E. as a ward of the court, *id.* ¶¶ 8–9.

Plaintiff had the opportunity to raise all the federal constitutional claims she now raises when she appealed this outcome to the Illinois Appellate Court, which adjudicated all of these claims on the merits. Plaintiff argued on appeal that her children were the property of the MSTA, and thus, that Illinois courts had no jurisdiction over them. The Appellate Court denied

---

[9] The *Fayyumi* court summarized *Homola* this way: "[I]f the federal plaintiff was the plaintiff in state court, res judicata should be considered, but if the federal plaintiff was the defendant in the state court, *Rooker–Feldman* should be considered." 18 F. Supp 2d 914 (citing *Homola*, 59 F.3d at 650). However, as the *Fayyumi* court clearly understood, this is just a heuristic, and will not always produce the correct result. While the heuristic applies well to this case, in which the State of Illinois proceeded against Dontia Edwards El, the Plaintiff in this matter, it is not necessary to rely on it to determine the outcome of the jurisdictional inquiry here.

10

the claim, explaining the nature of Illinois's circuit courts' general jurisdiction ("of all justiciable matters," *id.* ¶ 11), and reminding Plaintiff that, since the passage of the Thirteenth Amendment to the United States Constitution, people, including children, cannot be property. *Id.* ¶¶ 11–13. Plaintiff argued that her first amendment rights to raise her children in her belief system had been abridged in several ways. *Id.* ¶ 14. The Appellate Court considered the claim and denied it, holding that "respondent's religious practices do not allow her to avoid seeking proper medical care on behalf of A.E., and those practices also provide an injurious environment to both A.E. and D.T." *Id.* ¶ 15. Plaintiff argued that her Fourth Amendment rights had been violated by the seizure of her medical records, a claim which the Appellate Court also denied. *Id.* ¶¶ 16–17. And Plaintiff argued that the MTSA should have been made a party to the case, which the court also denied, explaining that the MTSA was not "a parent or relative" of the minors involved, and thus had no right to be a party to the case. *Id.* ¶¶ 18–19.

In short, Plaintiff leveled a comprehensive battery of constitutional and state law claims at DCFS, many of which are repeated in the instant complaint. All of these claims were denied by the Illinois Appellate Court. Thus, *Rooker-Feldman* directly bars many of the counts listed having to do with the First Amendment, or the claim that her children were the property of her church. Counts I, II, III, IV, V, and XVII were directly adjudicated in the state courts, and this court lacks the subject matter jurisdiction to sit in "appellate review" of those adjudications. *De Grandy*, 512 U.S. at 1005.

Plaintiff's remaining claims are all "inextricably intertwined" with her state court claims. *Feldman*, 460 U.S. at 483. For instance, Plaintiff argues that she was deprived of due process of law, Count VI, Am. Compl. 73–77, but in support of this claim, simply argues that representatives of DCFS and the Illinois Circuit Court judge conspired to pursue and prosecute

11

her case, without explaining what information they concealed or how it led them to pursue and prosecute her case. *Id.* Although Plaintiff did not raise this due process claim before the Illinois Appellate Court, she alleges no information that was not then before the court, which fully affirmed the finding of the lower court. In other words, the due process claim raised here simply *is* the case as it was presented to the Illinois Appellate Court. It is difficult to imagine a claim more "inextricably intertwined" with the state court claim.

The same or similar difficulties bedevil all of Plaintiff's other claims. Count VII purports to object to the Illinois Juvenile Court Act, which governs the form the state court proceedings took; Count VIII restates the first amendment argument in slightly different words; Count IX simply alleges that the whole circumstance of Plaintiff's state court loss was the outcome of a massive and shadowy conspiracy, as does Count X; Count XI faults the trial and appellate courts for not intervening, which is to say, not rendering the verdict Plaintiff wanted; Count XII accuses the state of malicious prosecution on no other allegation than having prosecuted the case in the first place; and on and on. In no instance does Plaintiff allege any facts other than those stated in the Court's recitation of the facts of the case, or those that were before the Illinois Appellate Court when it rendered its judgments. A plaintiff "failing to raise his claims in state court may forfeit his right to obtain review of the state court decision in any federal court." *Feldman*, 460 U.S. at 482 n.16. Here, Plaintiff has forfeited these claims by failing to raise them in state court. All of the claims consist of redescribing her case as it stood before the Illinois Appellate Court using different legal labels. A plaintiff may not escape *Rooker-Feldman* simply by devising creative legal descriptions for claims already ruled on by a state court, or claims that she could have raised there but did not. *See Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993) ("It is settled

that a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." (internal quotation marks omitted)).

Most tellingly, though, and most importantly for the *Rooker-Feldman* inquiry, all of the harms Plaintiff complains of flow from the state court decision—first, the decision of the Illinois circuit court in depriving her of custody, and then, the Illinois Appellate Court's affirmance of that decision in every aspect. Had the circuit court not adjudicated Plaintiff's children as neglected and granted custody to someone else, Plaintiff would not have suffered the deprivation, which, ultimately, is *the* harm of which she complains. So too, if the appellate court had not affirmed that judgment, but instead reversed it, Plaintiff would have nothing to complain of. It is true that adjudications made in Illinois state court under the Juvenile Court Act, as this one was, at the trial level, do not always provide a plaintiff with a reasonable opportunity to present her constitutional claims. *See Brokaw v. Weaver*, 305 F.3d 660, 668 (7th Cir. 2002) ("Because the Juvenile Court Act did not provide [Plaintiff] with a mechanism to present a claim against her relatives and the other state defendants for their alleged violations of her constitutional rights, she did not have a reasonable opportunity to present her claims for purposes of the *Rooker-Feldman* doctrine."). However, in the instant case, Plaintiff had a full opportunity to present her constitutional claims and have them heard in the state appellate court, where they were roundly rejected.

These circumstances are similar to those of *Long v. Shorebank Development Corp.*, 182 F.3d 548 (7th Cir. 1999), in which a woman was evicted from her apartment and sued her landlords. The court would have barred[10] her due process claims on *Rooker-Feldman* grounds, because, if proceedings in state court had resulted in her favor when she initially challenged the

---

[10] The Court ultimately found that *Rooker-Feldman* did not apply because, as in *Brokaw*, the limited nature of the trial court proceedings had not provided the plaintiff with an opportunity to present her constitutional challenges. *Long*, 182 F.3d at 558–59. Matters are different here, as explained above.

13

eviction, "it seems unlikely that she would have been evicted or lost all of her possessions, custody of her daughter, and her job." *Id.* at 556. The court further explained that "while Long complains that the defendants deprived her of her property without due process in initiating and pursuing the eviction action, the injuries she alleges were complete only when the Circuit Court entered the eviction order against her." *Id.* at 557. So too in the instant case, the harms of which Plaintiff complains would not have been suffered but for the circuit court's adjudication and the appellate court's affirmance.

As proponent of subject matter jurisdiction, Plaintiff—who has not responded to any of the motions to dismiss—bears the burden on the issue. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012). Because the Court is being asked to overturn a state court judgment by each of Plaintiff's claims, the Court lacks jurisdiction over all of Plaintiff's claims, and not just as to the defendants who moved to dismiss, or who moved to dismiss on *Rooker-Feldman* grounds.

### III. Leave to Refile Certain Claims

Plaintiff has hardly made a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). And Rule 8(a) "requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Nonetheless, the Court is mindful that it is improper "to dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading," *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001), particularly when a plaintiff proceeds without an attorney. The occasionally "baroque exuberance," *id.*, of the pro se litigant should not, in failing to achieve the Platonic ideal of "chaste, Doric simplicity implied by Rule 8 and the model

complaints in the Forms Appendix," *id.*, be held to a higher standard of clarity than the fulsomely comprehensive pleadings of credentialed attorneys, *see id.* Plaintiff's claims are dismissed because they fall afoul of *Rooker-Feldman*, not because they are difficult to read (although they are).

However, Plaintiff's complaint is so hydra-headed that the Court has had to engage in significant parsing of her 122-page amended complaint in order to determine that it is wholly an attempt to disturb Plaintiff's loss in state court, and that it contains no claims that are not "inextricably intertwined" with the state court claims. *Fayyumi*, 18 F. Supp. 2d at 913. The Court notes that certain of Plaintiffs' claims are less intertwined with Illinois's adjudication of her child custody rights than others. For instance, some of the charges leveled under the heading "Medical Malpractice," Am. Compl. 115–18, including the allegedly unauthorized vaccination and sedation of A.E., appear potentially distinct from Plaintiff's overarching attack on the custody adjudication. However, these claims as presently pleaded are so entangled with claims over which the Court has no subject matter jurisdiction that it is impossible to determine whether they could withstand the 12(b)(6) motions to dismiss leveled against them by Petrak and others. *See* Petrak's Mot. Dismiss 3–4.

"[L]ength and complexity may doom a complaint by obfuscating the claim's essence," *Garst*, 328 F.3d at 378, and these potentially surviving claims are, at present, so obfuscated. Plaintiff is therefore granted 30 days in which she may refile any portions of her complaint that are not inextricably intertwined with judgments of the courts of the State of Illinois. In so doing, she is cautioned to avoid claims over which this Court does not have subject matter jurisdiction, and to render a short and plain statement of the claim in accordance with Rule 8(a)(2).

## CONCLUSION

Accordingly, Defendants' various motions to dismiss, ECF Nos. 65, 67, 70, 74, 78, and 81, are GRANTED, as is the DCFS Defendants' motion for leave to exceed the type volume limitations imposed by local rule, ECF No. 72.  The case is DISMISSED.  Plaintiff is granted leave to file a new complaint in conformity with this order not later than October 16, or the Clerk will be directed to close the case.

Entered this 18th day of September, 2015.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
